IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ANALISA D. CHAVEZ, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No.  SA-14-CV-527-XR |
| | § | |
| CITY OF SAN ANTONIO, | § | |
| | § | |
| *Defendant*. | § | |

## ORDER

On this day the Court considered the City of San Antonio's (the "City") motion for summary judgment (docket no. 27), Plaintiff's objections to evidence (docket no. 30), and Defendant's motions to strike evidence (docket nos. 33-35).  After careful consideration, the Court grants the motion for summary judgment.

## I.     BACKGROUND

Plaintiff Analisa D. Chavez is a police officer who was recently promoted to the rank of detective with the San Antonio Police Department (SAPD).  She brings claims against the City for (1) gender discrimination, (2) sexual harassment, and (3) retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII") and Texas Labor Code § 21.055. Chavez filed her first and only charge with the Texas Workforce Commission, Civil Rights Division (TWC) and the United States Equal Employment Opportunity Commission (EEOC) on December 23, 2013, alleging sex discrimination and retaliation occurring from December 2010 to January 2014.  Docket no. 27 Ex. A-1 at 96 (the "TWC Charge").  Analisa Chavez's current husband, Officer George Chavez, has a similar action pending alleging discrimination and retaliation in Judge Orlando Garcia's Court. *See George Chavez v. City of San Antonio*, 5:14-cv-

00084 (W.D. Tex. January 21, 2014).  The City has moved for summary judgment on all three of Analisa Chavez's claims in this case.

### A. Facts

#### i. 2006-2010

Analisa Chavez graduated from the San Antonio Police Academy (the "Academy") in September 1999 and became a SAPD police officer. Docket no. 27 Ex. B (Chavez Dep. Tr. April 14, 2015) at p. 5 L. 23.  She was first assigned to the San Antonio Police Academy as an instructor in 2006.  *Id*. at p. 6, L. 5-6.  Her main duty as an instructor was to teach physical training and defensive tactics, but her duties increased over time. *Id*. at p. 8, L. 13-19.  At the time, she was married to Anthony Trevino, whom she married in 2000.[1]  *Id*. at p. 9, L. 11-20. The two had one daughter together.  *Id*. at p. 9, L 21-23.  Chavez filed for divorce in 2005 and the two divorced in 2007.  *Id*. at p. 9 L. 15-17; docket no. 27 Ex. E (Trevino Affidavit) at 1. Chavez remarried in 2007 to a man named McCluskey, and divorced him in 2010.  Docket no. 27 Ex. B at p. 11-12.  In 2010, Analisa Chavez began dating Officer George Chavez, another instructor at the Academy, to whom she is now married.  *Id*. at p. 16, L. 15-19.

Following her divorce from Trevino through October 2010, Trevino sent Analisa Chavez various text messages discussing reconciliation, which Chavez refused.  Docket no. 27 Ex. B at p. 14, L. 23 – p. 16, L. 5, p. 18, L. 3-10.  At the time of her relationship with McCluskey, Chavez describes the text messages as not "sexually explicit. Some of them were intimate in nature . . . 'No one can make you happy.  No one can please you the way I do . . . Why are you doing this?' They were constant."  *Id*. at p. 13 L. 6-10.  The text messages continued into the time when Analisa and George Chavez began dating.  From 2008 to 2010, Chavez describes the text

---

[1] At times relevant to this lawsuit Trevino was a captain, then Deputy Chief of Police, then Interim Chief of Police. Docket no. 27 Ex. E (Trevino Affidavit) .

messages as "more hostile," "unwarranted," and "unwanted advances" and she responded to "please stop.  Leave me alone."  *Id*. at p. 16-17.  Analisa Chavez also recalls "at the academy [Trevino] calling my office phone sometimes and I'd have shouting matches with him on my city phone . . . asking him to leave me alone."  Chavez alleges she had to interrupt a police psychologists' class to ask for help from the doctor she saw during her separation from Trevino because she was having emotional trouble with Trevino calling.  *Id*. at p. 17.[2]

Between 2006 and 2010, Chavez complained to her supervisors, Sergeant Marshall Campbell, Lieutenant Karen Falks, Captain Janace Florence, Sergeant Michalec and Sergeant Curtis Walker.  *Id*. at p. 25. L 11-13.  Chavez describes "venting" to her superiors and "requesting something be done" but does not describe any official complaints.  *Id*. at pp. 25-26. Chavez states "in retrospect, I think somebody should have said, 'Wow, this is getting out of hand, or this isn't changing. This is becoming more chronic." *Id*. at p. 26 L. 11-13.  Chavez states Trevino would send her "daily devotionals" with personal messages "once per month."  *Id*. at p. 27-28.

None of these allegedly harassing or inappropriate text messages or emails from Trevino to Analisa Chavez have been entered into the summary judgment record in this case.  *See* docket nos. 27, 29, and 31.  There were no EEOC charges or internal SAPD investigation reports filed for the alleged inappropriate acts occurring between 2006 and 2010.  *Id*. at p. 20.

**ii.      Late-2010 to January 2014**

Analisa and George Chavez apparently began their relationship in late-2010.  *Id*. at p. 16, L. 15-19.  They married in September 2013.  *Id*. at p. 17, L. 3-9.  Analisa Chavez alleges she and her current husband were harassed and retaliated against by Trevino and his friends throughout their relationship, continuing through to today.  Chavez states that she continued to get phone

---

[2] The time frame of these calls and episodes is unclear from the record.

calls, text messages, and emails from Trevino alluding to reconciliation that were harassing and emotionally difficult for her to deal with while she was dating George Chavez.  *Id*. at p. 18 L. 6-7.

Throughout 2011 and 2012, the Chavezes allegedly complained to their supervisors about what they perceived as Trevino harassing Analisa Chavez.  Docket no. 29 Ex. C at pp. 31-32, 48, and 52; docket no. 29 at ¶¶ 6 and 8.  Trevino was also allegedly "confronting George Chavez about his relationship with Analisa."  Docket no. 29 Ex C (George Chavez deposition) at p. 20 L. 9-20.  On August 10, 2012, the San Antonio Hispanic Police Officer's Association sponsored an event at a minor-league baseball game. George Chavez and Trevino had an altercation at the game, leading to George Chavez alleging Trevino elbowed him.  Trevino Affidavit at p. 1; Docket no. 29 Ex. E (IA Officer Martin Tobin Affidavit) at p. 1-2.  Trevino denies ever elbowing George Chavez, but the allegation led to an internal affairs (IA) investigation.  *Id*.; Trevino Affidavit at p. 1.

George Chavez's complaint to IA was an official complaint.   IA performed an investigation.  Analisa Chavez gave statements for that investigation, detailing Trevino's behavior towards her over the years.  The Chavezes pressed SAPD to take action to stop Trevino from inappropriately communicating with Analisa Chavez.

In their respective federal complaints, Analisa and George Chavez outline various irregularities in the IA investigation, including Trevino's alleged tampering with witnesses and the loss of evidence on the eve of the January 9, 2013 hearing.  *See e.g.*, docket no. 29 Ex. 26 ("Plaintiff's Summary of Facts") at ¶¶ 9-22.[3]  Eventually, George Chavez filed an EEOC charge on February 11, 2013, "based on retaliation and his opposition to the sexual harassment of

---

[3] The handling of George Chavez's IA investigation for an alleged assault by Trevino has no bearing on Analisa Chavez's sex harassment and retaliation case here.

Analisa Chavez and his participation in complaints to his supervisors and Internal Affairs." *Id.* at ¶ 18; docket no. 39 Ex. D.  George Chavez was involved in several other reported incidents that Analisa Chavez argues were retaliation for her relationship with him and his reporting to IA including: (1) Sergeant Gabe Trevino throwing a medicine ball at his head arguably in jest, docket no. 29 Ex. C (George Chavez Dep. Tr.) at pp. 118-19; (2) a "Line Complaint from Captain Flavin for an 'unauthorized' media interview from early January," Plaintiff's Summary of Facts at ¶ 17 (citing docket no. 29 Ex. C (George Chavez Dep. Tr.) at pp. 171-72); and (3) ordered to answer interrogatories about statements made when instructing cadets that Chavez believes were false, with one leading to a "write up" and counseling, Plaintiff's Summary of Facts at ¶ 121 (citing docket no. 29 Ex. C (George Chavez Dep. Tr.) at pp. 132-33).

During the IA investigation and afterwards, Analisa states that she and George Chavez were subject to continued harassment and retaliatory acts by Trevino and other SAPD officers. The specifics are mostly not disputed.  In May 2013, Officer Robert Moreno was transferred to the Academy as the Physical Training Coordinator ("PT Coordinator").  Analisa Chavez was not hired despite her wanting and expecting the job.  Docket no. 27 Ex. C (Captain Flavin Affidavit) at p. 2; Plaintiff's Summary of Facts at ¶ 23.  The position apparently included no increase in pay or benefits, but Chavez spoke with her supervisors about getting the responsibilities and they helped her prepare to assume these duties before learning about Moreno's hire.  *See* Flavin Affidavit at p. 3; Docket no. 39 Ex. C (Analisa Chavez's EEOC Description of Events).

On August 9, 2013, after the multiple incidents and alleged retaliation discussed above, George Chavez had an altercation with a cadet/trainee during training witnessed by Officer Moreno and Captain Flavin.  George Chavez allegedly made a racial remark.  Plaintiff's Summary of Facts at ¶ 25.  In a description of the event, Officer Moreno stated George Chavez

cursed and said he "hated that black bitch," referencing the cadet.  *Id.* (citing docket no. 29 Ex. P (SAPD Interoffice Correspondence Robert Moreno Supplement).[4]   After the report of the incident, Captain Flavin put George Chavez on special assignment.   After an IA investigation, George Chavez was permanently transferred out of the Academy.   Captain Flavin Affidavit at pp. 3-4; docket no. 39 Ex. D.[5]   On August 12, 2013, George Chavez amended his EEOC charge to reflect the incidents that had occurred since he filed his original EEOC charge.   Docket no. 39 Ex. D at 40-43.

In December 2013, Chavez forwarded an e-mail to her supervisor, Sergeant Walker, criticizing Officer Moreno.   Flavin Affidavit at pp. 5-6.   The e-mail was forwarded to Capt. Flavin who requested Chavez respond to interrogatories concerning her allegations.   *Id.* at p. 6. Chavez answered Captain Flavin's interrogatories.   She also voiced criticisms of Officer Moreno in a different e-mail to several individuals, including an outside vendor named Daryell Harmon. *Id.* attached emails at pp. 8-15.   Officer Moreno filed a complaint with IA after learning about Analisa Chavez's complaints and criticisms to their respective bosses and outside personnel.   He alleged she was harassing him with her baseless criticism.   Moreno's complaint led to an IA investigation.   Moreno's claim was deemed meritless by SAPD.   Docket no. 27 Ex. A, p. 27, L. 17-20.   Chavez was not disciplined for her complaints or e-mails regarding Officer Moreno despite her taking actions outside her chain of command.   *Id.* at p. 27, ll. 23-25.

On December 23, 2013, Analisa Chavez filed her TWC Charge.   Chavez's TWC Charge states, "I believe I have suffered harassment and retaliation in violation of Title VII and the Texas Labor Code. I have previously suffered discrimination and harassment. My husband also complained about discrimination and harassment and suffered retaliation based on his

---

[4] The Chavezes dispute the racial remark, adding that Officer Moreno's accounts of the events varies widely.   The details of this episode are irrelevant to this case.
[5] George Chavez's EEOC charge and amendment discuss at length his transfer out of the Academy.

complaints. I believe that I am now suffering retaliation and false claims against me based on these prior complaints. I have provided a short outline and statement." TWC Charge; docket no. 39 Ex. B.

### iii.   February 2014 to the Present

In December 2014, a police officer union representative sent an email to multiple officers, including Analisa Chavez, explaining that the Union Labor Relations Committee (ULRC) had decided to switch suppliers of batons. Docket no. 27 Ex A, p. 34, L. 2-23. Chavez responded by copying new officers at the Academy and criticizing the ULRC's decision because she believed it was reached based on an "arbitrary" test. Docket no. 27 Ex A, p. 34, L. 2-23.[6] Captain Jimmy Reyes, the new commander of the Academy, ordered her to respond to several questions related to the email, as Captain Flavin had done the year before when Analisa Chavez sent an email with various allegations aimed at Officer Moreno. Docket no. 27 Ex. A, p. 39, L. 6-20. She responded to Reyes's order, and though Chavez believed it might lead to an IA investigation about the incident, "it never" did. Docket no. 27 Ex. A, pp. 39-40.

On January 16, 2015, Analisa Chavez was promoted to detective. Docket no. 27 Ex. A, p. 5, L. 4-14. She was given a selection of positions; the same process for all new detectives. Docket no. 27 Ex. A, pp. 5-6. She was placed at one of her choices, but not her top choice (in the special victims unit), which she continues to apply for but she has not received during the last two openings. *Id.* at pp. 6-8. She has shadowed at the special victim's unit and states officers and detectives are "very positive" about her working in the unit. *Id.* at p. 7. Chavez has applied for other openings for detective she would apparently prefer to her current position, including in "forensics", but has not received those transfers. *Id.* at p. 9.

---

[6] These e-mails are not included in the record.

B. **Disputed Facts**

While the parties agree on the general outline and timeline of events, they have fact disputes that drive their difference in theories of, and positions in, this case.  First, Analisa Chavez contends that Trevino has meddled with her and her husband's career behind-the-scenes as he has been in their chain of command at times.  *See e.g.*, docket no. 27 Ex. B. at pp. 10-11, 22-23, and 60.  She believes this is most clearly demonstrated by the alleged irregularities in the IA investigation of the physical assault allegations by George Chavez against Trevino.  *See* docket no. 29 at ¶ 8; Plaintiff's Summary of Facts at ¶¶ 12-15.  The City and Trevino deny he has interfered at all with discipline and other decisions relating to the Chavezes.  *See* docket no. 27 Ex. C Captain Flavin Affidavit at 2-3; and *id*. Ex. D Trevino Affidavit at 2.  In his affidavit, Trevino states:

> I had no participation or input in the decision to designate Officer Robert Moreno to the Physical Training Coordinator position at the Academy. This decision was made by Captain Flavin. Also, I never assigned or sent anyone to the Academy to monitor or "keep an eye" on either George Chavez or Analisa [Chavez]. Also, at no time did I give the instruction or ask anyone to monitor, harass or retaliate against George Chavez or Analisa Diaz.
>
> After the instruction was given to have all decisions involving George Chavez and Analisa Chavez routed from Captain Flavin to Assistant Chief Banales and onto Chief McManus, I did not participate or have any input in any decisions involving George Chavez or Analisa [Chavez]. The exception to my lack of involvement relates to Analisa and George Chavez's promotions from the rank of patrol officer to the rank of detective-investigator. Both Analisa Chavez and George Chavez took a promotional examination and they both obtained high enough scores which made them eligible for promotion. Based on her test score, Analisa [Chavez] was promoted to the rank of detective-investigator on January 17, 2015. In my position of interim Chief of Police, I approved this promotion and promoted her to the rank of detective-investigator.[7]

Docket no. 27 Ex. D Trevino Affidavit at 2.

---

[7] Trevino also denies harassing, sexually or otherwise, Analisa Chavez or George Chavez.  He admits to text messages and phone communications, and says only, "These communications have related to or involved our personal relationship and the care of our daughter."  Docket no. 27 Ex. D Trevino Affidavit at 2.

Second, Chavez believes she has continuously suffered negative consequences either because Trevino directly ordered them, or her superiors or friends of Trevino in SAPD take actions to make Trevino happy or so as not to cause "drama" with Trevino.  *See* docket no. 27 Ex. A at pp. 9-11 ("I think it's a pretty common belief that part of the reason why I work the shift I work and why I'm not being selected for positions is maybe out of fear of reprisal on the part of the supervisors. Like we don't want to have to mess with this or maybe this is a lot of -- this could be a lot of drama for us, so we don't want to get involved."), pp. 41 and 56 (Analisa Chavez discussing how various supervisors' friendships with Trevino led to her mis- and disparate treatment).   She argues she suffered because she (1) was "intimidated," (2) had "multiple complaints" filed against her, (3) was denied promotions, and (4) "had false claims asserted against her that were unfounded." Docket no. 29 at 30.

For example, Chavez states she trained for and was told she would take over the PT Coordinator position by her former supervisors John Sharp and Sergeant Walker before Captain Flavin hired Officer Moreno.  Plaintiff's Summary of Facts at ¶ 23 (citing docket no. 29 Ex. A: April 14, 2015 Oral Deposition of Analisa Chavez at pp. 59-60; docket no. 29 Ex B: May 18, 2015 Oral Deposition of Analisa Chavez at p. 55:8-21) (the first deposition excerpt does not support this assertion, or even relate to it; the second describes Chavez's plans with former supervisors but states she had no personal knowledge of whether Captain Flavin knew of or agreed with those plans and admitting no one promised her anything).  Analisa Chavez argues Trevino intervened in the hiring decision and that lower level supervisors were given no input in the PT Coordinator hiring decision, which was atypical.  *Id*.  She also argues she has certain certifications that make her more qualified for the position than Officer Moreno.  Docket no. 29 Ex. at 3.

The City argues, however, that Captain Flavin made the PT Coordinator decision on his own with no animus towards Analisa Chavez.  Captain Flavin, who was in charge of the Academy at the time of the hiring, states:

> The PT Coordinator position is traditionally held by an officer or detective-investigator.  It is not a supervisory position nor does it come with any increase in pay over other officer instructor positions. [Flavin] had made the decision in early 2012 to try to have Officer Robert Moreno return to the Academy as an instructor if the situation were to arise that then-PT Coordinator Officer John Sharp ever vacated the position.  Officer Moreno had been an instructor at the Academy years earlier . . . . I was familiar with Officer Moreno's physical training capabilities and experience and wanted him to be the PT Coordinator. Officer Moreno had been at the Academy when I was a cadet and was very experienced in physical training and defensive tactics instruction. Officer Moreno was a high level black belt in martial arts, had helped develop and implement the Academy's physical training program and owned and instructed his own martial arts training facility. Officer Moreno had decades of experience in law enforcement related training experience.
>
> In early 2012, I initially approached Officer Moreno while he was at the Academy for in-service training and asked him if he would be interested in coming back to the Academy to take on the role of PT Coordinator. He indicated that he was interested. I anticipated an opening in the PT Coordinator position as the officer holding that position, John Sharp, was in line for the promotion to the rank of Detective. However, upon his promotion to the rank of Detective, I was able to swap a detective position from the Applicant Processing Unit with the officer position at the Academy (which was ultimately transferred to the Recruiting Detail portion of the Applicant Processing Unit),  and thus able to keep Detective Sharp as the PT Coordinator. In the spring of 2013, Detective Sharp requested a transfer from the Academy so that he could obtain experience in the field. At that time, I once again approached Officer Moreno and offered him the PT Coordinator position, which he accepted.

Docket no. 27 Ex. C (Flavin Affidavit) at pp. 2-3.  Captain Flavin continues:

> As the commander of the Academy, it was within my sole discretion to appoint whomever I wanted to the PT Coordinator position upon the approval of my supervisor(s). [George and Analisa Chavez] were never under consideration for the PT Coordinator position by me. My intention was to place Officer Moreno in that position in the case Officer/Detective John Sharp vacated it, and no one else was considered. Based on my personal interactions with Officer Moreno, I believed he had the proper disposition to interact with the cadets in a manner conducive to learning, and conduct the physical and defensive tactics training with a professional approach. I also considered his extensive experience and training and considered him to be the right person for the position.

*Id.* at p. 3.   Trevino also denies participation in the decision.   Docket no. 27 Ex. D Trevino Affidavit at 2.

The parties also appear to have two disputes about what information is relevant for the Court's consideration: (1) what timeframes are relevant, i.e. the times before and after the period outlined in Chavez's TWC Charge; and (2) whether the alleged retaliation and treatment of George Chavez is relevant.   Analisa Chavez spent much of her testimony and parts of her briefing on the period before December 2010 and after January 2014.   *See e.g.*, Plaintiff's Summary of Facts at ¶¶ 6 and 40; docket no. 27 Ex. B at p. 14, L. 23 – p. 16, L. 5, p. 18, L. 3-10. She also cites continuously to alleged retaliation and maltreatment of her current husband as evidence of retaliation in her case here.   *See e.g.*, Plaintiff's Summary of Facts at ¶¶ 9-22, 25-31; docket no. 29 at ¶¶ 28-33.   The City denies the relevance of evidence from outside the period cited in Chavez's TWC Charge and the evidence relating to George Chavez's alleged retaliation.

### C. <u>Procedural History</u>

Analisa Chavez filed her TWC/EEOC Charge on December 13, 2013, alleging sex discrimination and retaliation allegedly occurring December 2010 to January 2014.   Docket no. 27 Ex. A-1 at 96.   Neither the TWC nor the EEOC took action, and on June 11, 2014, Chavez filed this case in federal court.   *See* docket no. 1 Ex. A (EEOC right-to-sue letter).   The live complaint, which has never been amended, alleges causes of action for: (1) sex discrimination and (2) sexual harassment; and (3) retaliation.   *See* docket no. 1 at 1.   The Court extended scheduling order deadlines twice.   *See* docket nos. 17 and 25.

The City filed this motion for summary judgment on all of Chavez's claims on June 29, 2015.  Docket no. 27.  Chavez responded to the motion for summary judgment on July 17, 2015, also filing objections to certain evidence the City presented in its motion.  Docket nos. 29 and 30.

The City replied on July 31, 2015, and also filed three separate motions to strike evidence presented by Chavez in her response.[8]  Docket nos. 33-35.  The City also responded to Chavez's objections to its evidence.  Docket no. 32.[9]

In its motion for summary judgment, the City argues there is no genuine issue of material fact that: (1) Analisa Chavez was not sexually harassed or sexually discriminated against by anyone employed by the City; (2) her retaliation claim fails because (a) she did not suffer an adverse employment action, and (b) even if she suffered an adverse employment action, she has not established a causal connection between a protected activity and the adverse action or pretext for the City's offered explanation for the adverse action.  Docket no. 27.  The City also argues allegations from outside the timeframe indicated in the TWC Charge, so from before late-2010 and after January 2014, cannot be considered because any claims arising from those times have not been exhausted.  *Id.*  Chavez's response argues: (1) she has presented material issues of fact on (a) whether she engaged in a protected activity, (b) whether she suffered an adverse employment action, and (c) whether there was a causal connection between the protected activity and the adverse employment action.  Docket no. 29 at ¶¶ 24-40.  She argues she suffered an

---

[8] The motions to strike each relate to one of the lengthy affidavits submitted by Chavez in her response.  Docket no. 33 moves to strike portions of Analisa Chavez's Affidavit, docket no. 29 Ex. U.  Docket no. 34 moves to strike portions of George Chavez's Affidavit, docket no. 29 Ex. T.  Docket no. 35 moves to strike portions of Officer Martin Tobin's Affidavit, docket no. 29 Ex. D.  Analisa Chavez moved for an extension of time to respond to the motions to strike, which the Court granted.  She responded on August 17, 2015.  Docket nos. 40-42. The Court does not need to rule on these motions or use any of the evidence included to reach its conclusion, and therefore does not. They are denied as moot.

[9] Chavez objects to portions of Captain Flavin's Affidavit, docket no. 27 Ex. C, Officer Moreno's Affidavit, *id*. Ex. D, and Trevino's Affidavit, *id*. Ex. E. The Court uses none of the objected to portions to reach its conclusions, with the exception of Trevino's Affidavit that states: "I had no participation or input in the decision to designate Officer Robert Moreno to the Physical Training Coordinator position at the Academy. This decision was made by Captain Flavin. Also, I never assigned or sent anyone to the Academy to monitor or "keep an eye" on either George Chavez or Analisa [Chavez]. Also, at no time did I give the instruction or ask anyone to monitor, harass or retaliate against George Chavez or Analisa Diaz."  In the portion of her objection that purports to object to this passage, Chavez only makes argument as to a different passage of Trevino's affidavit that again the Court did not consider.  See docket no. 30 (objecting to Trevino's statement that he was not in the Academy's chain of command, at least as it related to George and Analisa Chavez, as self-serving and inconsistent with his deposition testimony).  Aside from the portion of Trevino's deposition that supposedly demonstrates his "chain of command" statements were inconsistent, that argument is not applied to the passage above that the Court used to reach its conclusions. The Court overrules the objection to the paragraph of Trevino's affidavit that begins "I had no participation or input . . . ."

adverse employment action through (1) actions taken directly towards her, like bypassing her for the PT Coordinator position, and (2) actions taken against her husband, George Chavez, and that he is within her "zone of interests" such that adverse actions taken against him are legally cognizable as actions against her. *Id*. at 24-34.

In its reply, the City offered two arguments: (1) Chavez has abandoned her claims for sexual discrimination and sexual harassment because the City moved for summary judgment on those claims, making extensive and specific argument about them, and Chavez did not address them at all in her response; and (2) Chavez's response fails to cite to any evidence within its brief, and only presents evidence through the attached "Plaintiff's Summary of Facts," so the Court can dismiss her claims as not presenting any evidence in the summary judgment record. Docket no. 36 at ¶¶ 2-3; *see also* docket no. 29.

## II.    LEGAL STANDARD

A court shall grant summary judgment if the movant shows that there is no genuine issue of any material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  To establish that there is no genuine dispute over any material fact, the movant must submit evidence that negates the existence of some material element of the nonmoving party's claim or defense.  If the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, the movant can merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense.  *Id.*  Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Fields v. City of South Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).

"The nonmoving party cannot discharge that burden by referring to the 'mere allegations or denials' of the nonmoving party's pleadings; rather, that party must, either by submitting opposing evidentiary documents or by referring to evidentiary documents already in the record, set out specific facts showing that a genuine issue exists. *Skotak v. Tenneco Resins, Inc*., 953 F.2d 909, 915 (5th Cir. 1992) (*quoting Lavespere v. Niagara Mach. & Tool Works, Inc*., 910 F.2d 167, 178 (5th Cir. 1990)).  The party opposing summary judgment must "identify specific evidence in the record . . . and articulate the precise manner in which that evidence supports his or her claim."  *Spear Marketing, Inc. v. Bancorpsouth Bank*, 2015 WL 3972246, *8 (5th Cir. 2015) (citing to *Ragas v Tennessee Gas Pipeline, Co*., 136 F.3d 455, 458 (5th Cir. 1998)).  Fed. R. Civ. P. 56 "does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."  *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (*quoting Skotak*, 953 F.2d at 915 & n. 7).

In order for a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, put differently, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant.  *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 n.4 (1986).  In making this determination, the court should review all the evidence in the record, drawing all reasonable inferences in favor of the nonmovant and without making credibility determinations or weighing the evidence.  *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554–555 (1990).  The court also considers "evidence supporting the moving party that is uncontradicted and unimpeached."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

### III.    ANALYSIS

#### A.  All claims dated prior to February 26, 2013 are time-barred

Pursuant to 42 U.S.C. § 2000e-5(e), an EEOC charge must be filed within 180 days after the alleged unlawful employment practice. *Conner v. Louisiana Dep't of Health & Hospitals*, 247 F. App'x 480, 481 (5th Cir. 2007). That period is extended to 300 days if "the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice." 42 U.S.C. § 2000e-5(e). The TWC has authority to remedy employment discrimination, meaning Texas is a "deferral state."  The Fifth Circuit has held that when a claimant submits an EEOC charge and, pursuant to a work-sharing agreement, the EEOC accepts it on behalf of a deferral state, the claimant is deemed to have initially instituted proceedings with the state agency and the 300-day period is triggered.  *Conner*, 247 F. App'x at 481 (citing *Vielma v. Eureka Co.*, 218 F.3d 458, 462 (5th Cir. 2000) and *Griffin v. City of Dallas*, 26 F.3d 610, 612-13 (5th Cir. 1994)).   Therefore, any facts or evidence of retaliatory acts occurring more than 300 days before the TWC/EEOC Complaint was filed are time-barred from this Court's consideration.  *See Ikossi-Anastasiou v. Bd. of Supervisors of Louisiana State Univ.*, 579 F.3d 546, 549, 551 (5th Cir. 2009) (holding retaliatory acts are time-barred unless they occurred within 300 days of filing the complaint with a state or local agency).

Here, any claims dated prior to February 26, 2013, 300 days before Analisa Chavez's TWC Charge, are time-barred.

#### B.  Gender Discrimination and Sexual Harassment Claims

To establish a prima facie case for sex discrimination, a plaintiff must show that (1) she belongs to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) she was replaced by someone outside her protected class, or

similarly situated employees outside the protected class were treated more favorably under nearly identical circumstances. *Earle v. Aramark Corp.*, 247 F. App'x 519, 523 (5th Cir. 2007) (citations omitted). To establish a prima facie case of hostile-work-environment sex harassment, a plaintiff must show: "(1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; and (4) that the harassment affected a term, condition, or privilege of employment." *Donaldson v. CDB Inc.*, 335 F. App'x. 494, 501 (5th Cir. 2009).

The City argues Chavez has abandoned her claims for sexual discrimination and sexual harassment because the City moved for summary judgment on those claims, making extensive and specific arguments about them, and Chavez did not address them at all in her response. Docket no. 36 at ¶ 3. In the alternative, the City argues there are no disputed material fact issues on certain elements of a discrimination or harassment claim to preclude summary judgment. The City's motion properly moves for summary judgment on the sex discrimination and sex harassment claims under Title VII. *See* docket no. 27 at 6-9. Chavez's response occasionally mentions "harassment" and "discrimination," but never addresses her discrimination or sexual harassment causes of action under Title VII. *See* docket no. 29. Further, her claims for sex discrimination and harassment were apparently based on text messages and emails sent by Trevino, and Analisa Chavez has failed to include those in the summary judgment record. *See id.* (25 exhibits do not include text messages or any email allegedly the bases for sexual harassment). As noted above, any claims prior to February 26, 2013 are time-barred.

The Court finds Chavez has abandoned her sex discrimination and sex harassment claims because she offers no argument and no competent summary judgment evidence to support those two claims. *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 525 (5th Cir. 2005) (upholding trial

court's decision disposing of claims that were not briefed on summary judgment); *Brooks v. Firestone Polymers, LLC*, 70 F. Supp. 3d 816, 862 (E.D. Tex. 2014) (holding that because the plaintiffs did not brief certain claims in their responsive brief, any attempt at recovery under the claims not briefed were waived and no longer at issue) (collecting cases, including *Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 190 (5th Cir. 2007)).  Even if she had not "abandoned" these claims, Plaintiff provides no competent summary judgment evidence that she was subjected to a sufficiently severe or pervasive hostile work environment, harassment because of her sex (rather than her status as Trevino's former spouse), or that the alleged harassment resulted in a tangible adverse employment action.  *See Donaldson*, 335 F. App'x at 501.  With regard to her sex discrimination claims, Plaintiff only offers conclusory statements and her subjective belief that she has been denied any promotions (or other job positions) because of her sex.  The City is therefore granted summary judgment on Chavez's sex discrimination and sex harassment claims.  Those claims are dismissed.

### C. Retaliation

Title VII makes it an "'unlawful employment practice' for an employer 'to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin.'" *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2525 (2013) (quoting § 2000e–2(a)). Title VII prohibits retaliation against employees who engage in protected conduct, such as filing a charge of harassment or discrimination.  *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002) (citing 42 U.S.C. § 2000e–3(a)).

Analisa Chavez's live complaint states the City, "unlawfully retaliated against Plaintiff because she engaged in 'protected activity' under Title VII and Texas Labor Code § 21.055. Defendant and its employees have retaliated and continue to retaliate against Analisa Chavez, a

stellar employee of its police department, because she opposed and reported the repeated discrimination and harassment to her superiors and others in the department."  Docket no. 1 at ¶ 29.

The City argues her retaliation claim fails because there is no genuine issue of material fact that (1) Chavez did not suffer an adverse employment action, (2) even if she engaged in a protected activity and suffered an adverse employment action, she has not established a causal connection between the two, and (3) the City has offered a legitimate nondiscriminatory reason for the adverse actions and Chavez has not met her burden to demonstrate that reason was just pretext for retaliation.  Docket no. 27.  Chavez's response argues she has presented material issues of fact on all elements of her retaliation claim, including pretext.  Docket no. 29 at ¶¶ 24-40.  She argues she engaged in protected activity by reporting the harassment she and George Chavez were suffering,[10] and providing testimony in the baseball assault IA investigation.[11] She also argues she suffered an adverse employment action through (1) actions taken directly towards her, like bypassing her for the PT Coordinator position, complaints against her by other officers, and "discipline" she received from Captains Flavin and Reyes, and (2) actions taken against her husband, George Chavez, like transferring him from the Academy and physical assaults, and that he is within her "zone of interests" such that adverse actions taken against him are legally cognizable as actions against her.  *Id*. at 24-34.

To state a claim for retaliation under Title VII (and the Texas Labor Code) a plaintiff must show that (1) she engaged in conduct protected by Title VII; (2) she suffered a materially adverse action; and (3) a causal connection exists between the protected activity and the adverse action.  *Jenkins v. City of San Antonio Fire Dep't*, 784 F.3d 263, 269 (5th Cir. 2015) (citing

---

[10] Though it is not clear from her brief when she made those reports, it almost certain they occurred before the 300-day period before she filed the TWC Charge.
[11] Chavez does not specifically reference George Chavez's EEOC filings as protected activity for her.

*Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 484 (5th Cir. 2008)); *see also Pineda v. United Parcel Service, Inc.*, 360 F.3d 483, 487 (5th Cir. 2004) (reciting the almost identical elements for retaliation in under the Texas Labor Code).

Once a plaintiff has made a prima facie case, the employer must provide "some legitimate nondiscriminatory reason" for the adverse action taken. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). If the employer provides a nondiscriminatory reason, the burden shifts back to the plaintiff to show a genuine issue of material fact that the employer's proffered nondiscriminatory reason is a pretext for retaliation. *See Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (internal citation omitted).

 i. *Protected Activity*

"Protected activity" is defined as opposition to any practice made unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII. *Green v. Administrators of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002), *as amended on denial of reh'g and reh'g en banc* (Apr. 26, 2002) (citing 42 U.S.C. § 2000e–3(a)); *see also* Texas Labor Code § 21.005 (defining protected activity as taken by a person who "(1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing"). To "oppose" a discriminatory practice is interpreted broadly. *See Crawford v. Metro. Gov't of Nashville and Davidson County, Tenn.*, 555 U.S. 271, 277-78 (2009).

The City concedes that Chavez engaged in a protected activity when she filed her TWC Charge because filing official charges with the TWC and EEOC are protected activity. *See* docket no. 27 at 10. The City argues that Chavez's other "opposition" within the 300-day period before she filed her TWC Charge by testifying, assisting, and participating in the baseball

game assault IA investigation is not protected activity under the statute because the IA investigation for an assault is not an investigation or hearing "under Title VII." The City argues that investigation was not "under Title VII" because it was related to an alleged physical assault by Trevino on George Chavez's person; it was not an investigation arising out of complaints of sex discrimination or sexual harassment. Docket no. 27 at 12-13.

Chavez argues she did undertake other protected activity. Docket no. 29 at ¶¶ 24-27. She argues, "The evidence shows that Officer Analisa Chavez opposed the harassment, confronted the harasser, reported the harassment and retaliation on multiple occasions, filed grievances about the harassment and retaliation and filed an EEOC claim. Therefore, based on the evidence, Officer Chavez engaged in a protected activity by opposing and reporting Defendant's discriminatory, harassing and retaliatory practices." *Id.* at ¶ 27. However, it is unclear exactly what episodes or reports Chavez believes were protected activity within the 300-day period before her filing of her TWC/EEOC Charge because she fails to cite specifically to any competent summary judgment.[12]

Chavez admits to not having made any official charges or complaints before she began dating George Chavez. *See* docket no. 27 Ex. B. at p. 22-26. George Chavez did file an official grievance that led to an IA investigation after Trevino's alleged assault on him. See docket no. 27 Ex. E at p. 1; docket no. 27 Ex. A at p. 71 L 9-18. Chavez apparently argues that George Chavez's complaint to IA was about the assault, but also encompassed allegations of "harassment" by Trevino of Analisa and George Chavez. *See* docket no. 29 at ¶ 6 ("George Chavez even complained to Internal Affairs about the perceived unwelcome harassment."). However, in her summary of facts, Analisa Chavez admits the testimony she provided during the IA baseball assault investigation was opposing "the assault and resulting retaliation against

---

[12] Plaintiff does not address the 300-day issue at all.

George Chavez." Docket no. 29-26 at ¶ 10. The summary judgment record is clear that that investigation was only about an alleged assault upon George Chavez; it was not an investigation "under Title VII;" and therefore her participation in that investigation was not a "protected activity" under Title VII.

Chavez also argues her unofficial statements to her supervisors about dealing with her ex-husband, Trevino, including arguments with Trevino himself and telling him to leave her alone, were protected activities. Docket no. 29 at ¶ 27. But Chavez does not cite to any competent summary judgment evidence of conversations with supervisors about sex harassment or discrimination in the 300-day period before the TWC/EEOC Charge was filed. Analisa Chavez's complaints and conversations all appear to have occurred before 2013 or were reporting problems not related to Title VII. *See e.g.*, docket no. 29 Ex. B at p. 46 (before 2013); docket no. 29 Ex. B at p. 25 (disagreement regarding baton provider).

Though it is unartfully argued, Chavez appears to point out that she could have legally cognizable claims for retaliation for any adverse actions against herself due to her now-husband George Chavez filing his EEOC charge on February 11, 2013. *See* docket no. 29 at ¶¶ 32-34. Analisa Chavez was arguably within the "zone of interests" of George Chavez for retaliation purposes when George filed his EEOC Complaint. *See Thompson v North American Stainless*, 131 S. Ct. 863 (2011); *Zamora v City of Houston*, 425 F. App'x 312 (5th Cir. 2011).[13] George Chavez filed his original charge on February 11, 2013 and an amended charge on August 12, 2013.

---

[13] The Chavezes were not actually married at the time of George's EEOC Complaint; they married six months later. The Court does not know if they were engaged in February 2013. *Zamora* involved fiancées, and the Court finds that a dating relationship of over two years that led to marriage six months later is a virtually identical relationship to *Zamora* to satisfy the test.

ii.     *Materially Adverse Actions, Causal Connection, and Pretext*

"A materially adverse action, in the retaliation context, is one which might 'dissuade[ ] a reasonable worker from making or supporting a charge of discrimination." *Jenkins*, 784 F.3d at 269 (5th Cir. 2015) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "[P]rohibited actions are those by an employer 'that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers.'" *Burlington N.*, 548 U.S. at 68. "[N]ormally, petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Id.* "Every job has its frustrations, challenges and disappointments, these inhere in the nature of work. An employee . . . is not . . . guaranteed a working environment free of stress." *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985), *cert. denied*, 475 U.S. 1082 (1986); *see McCann v. Litton Sys., Inc.*, 986 F.2d 946, 952–53 (5th Cir. 1993).

A plaintiff must also show a causal connection between the materially adverse action and the protected activity. *See Davis v. Fort Bend County*, 765 F. 3d 480, 491 (5th Cir. 2014).

First, the Court notes that any actions taken against her husband, George Chavez, such as his "demotion," or transfer are irrelevant in this case. *Thompson* and *Zamora* are not applicable to this case. In *Thompson*, both Thompson and Thompson's fiancé (Regalado) were employees of North American Stainless. Regalado filed a charge of discrimination with the EEOC. Once NAS was notified of the Regalado charge, Thompson was fired. He then filed his own EEOC charge and subsequent lawsuit. The United States Supreme Court concluded that Thompson was within the zone of interests sought to be protected by Title VII.

In this case Analisa Chavez is alleging she engaged in her own protected activity and was thereafter allegedly retaliated against. There is no need to rely upon George Chavez's EEOC charge. Additionally, Analisa Chavez must establish that *she* (not George) suffered from some

adverse action.  Claims for adverse employment actions allegedly suffered by George are only proper in George Chavez's case in Judge Garcia's Court.  Analia Chavez has no standing to assert them here.  *Thompson* only stands for the proposition that Analisa may argue that the City retaliated against her because George filed charges of discrimination with the EEOC.  Analisa must still establish that she suffered from some adverse employment action and must still establish the causation element of her retaliation claim.

In this case Analisa argues the following were materially adverse actions taken against her: (1) the refusal to place her into the PT Coordinator position in May 2013; (2) Officer Moreno's filing of a complaint against her for an email she sent to other officers; (3) Captain Flavin ordering her to answer interrogatories about the email that led to Officer Moreno's complaint; (4) Captain Reyes's criticism of her after she sent an email about the change in the baton manufacturer; and (5) an accusation that she cheated on a running test.

It is clear that Chavez desired the PT Coordinator position, but there is no evidence in the record that the PT Coordinator position was objectively better than her prior position such that the denial would dissuade a reasonable person from engaging in protected activity.

Even assuming the failure to promote her to PT Coordinator was an adverse action, and that adverse action was causally connected to some protected activity, Plaintiff fails the pretext element.  The burden shifted to the City to offer "some legitimate nondiscriminatory reason" for the adverse action taken. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  The City has done so.  Captain Flavin describes at length the reason for his decision to transfer Officer Moreno to the PT Coordinator position.  Docket no. 27 Ex. C (Flavin Affidavit) at pp. 2-3.  He was trained by Officer Moreno himself, believed him to be up to the task because of his relevant expertise in martial arts and defensive techniques, and Captain Flavin planned to bring Officer

Moreno in for many months.  *Id*.  Captain Flavin also asserts that Trevino had nothing to do with his decision to transfer Officer Moreno, which Trevino confirms.  *Id*. at 3; docket no. 27 Ex. E at 2.

Once the City has offered a legitimate nondiscriminatory reason for the adverse action, the burden shifts back to the plaintiff to show a genuine issue of material fact that the employer's proffered nondiscriminatory reason is a pretext for discrimination.  *See Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citation omitted).  Unlike the causal connection element, the Fifth Circuit has held "temporal proximity alone is not sufficient to establish the 'but-for' causation in the pretext prong of the analysis."  *Wood*, 523 F. Supp. 2d at 523 (citing *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007)); *see also Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013) (affirming the "but-for" causation standard for retaliation cases).  Temporal proximity is still evidence of pretext, but it cannot alone show pretext because such a rule would "unnecessarily tie the hands of employers."  *Strong*, 482 F.3d at 808 (citing *Clark County School District v. Breeden*, 532 U.S. 268, 273 (2001)).  A plaintiff's own subjective belief that the employer's proffered reason is also not sufficient to establish an issue of material fact on pretext.  *See Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408 (5th Cir. 1999).

Many of Analisa Chavez's arguments about pretext relate to the actions allegedly taken against George Chavez.  *See* docket no. 29 at ¶¶ 38-40.  The "shifting explanations" and story regarding George Chavez's conflict with Officer Moreno are not evidence of pretext for Chavez's retaliation claim.  *See* docket no. 29 (arguing "shifting explanations" is evidence of pretext; but only showing such shifts for actions against George Chavez, not Analisa or the PT

Coordinator decision).  The remaining arguments Chavez makes regarding pretext also fall short either because they are only based on her and her husband's subjective belief or pure speculation.

The next action Chavez argues was an adverse employment action is Officer Moreno's complaint to IA about Chavez harassing him.  Plaintiff's Summary of Facts at ¶ 34.  Officer Moreno's complaint about Chavez harassing him led to an IA investigation, but by Chavez's own admission led to no discipline.  *See* docket no. 27 Ex. A at p. 27.  Analisa Chavez appears to argue this led to some negative action by Captain Flavin, but the only evidence of that in the record is Flavin mentioning to Chavez in her performance review to improve her relationship with Officer Moreno.  A constructive comment at a performance review is not discipline that is materially adverse action, as it has produced no harm and would not dissuade a reasonable person from opposing discrimination.  *See Burlington N.*, 548 U.S. at 68; *see also Thibodeaux-Woody v. Houston Cmty. Coll.*, 593 F. App'x 280, 286 (5th Cir. 2014) ("A less than optimal performance review, without more," like being attached to a financial loss, "is not something that would have discouraged [the plaintiff] from asserting a charge of discrimination.").  Further, Captain Flavin's order to Chavez to answer interrogatories about the email that caused Officer Moreno to file his complaint is not an adverse employment action.  Having to answer interrogatories after sending an email to what could be considered inappropriate recipients outside the chain of command is not a materially adverse action, produced no harm and would not dissuade a reasonable person from opposing discrimination.  *See Burlington N.*, 548 U.S. at 68.

In 2014 and 2015, Chavez argues she suffered multiple materially adverse actions despite her promotion to detective at the beginning of 2015: (1) Captain Reyes's "discipline" for

Chavez's e-mail about the baton manufacturer; (2) missing extra and bonus time; and (3) an accusation about cheating on a running test.

First, Captain Reyes's "discipline" after Chavez's emails was not a materially adverse employment action. Reyes asked Chavez to answer a few questions, and when she did, no further discipline was taken. Like the interrogatories Captain Flavin asked, having to answer interrogatories is not an adverse employment action.

Plaintiff also appears to argue that she was retaliated against by having to take time off or missing extra bonus time, including not getting additional assignments during various Fiesta Celebration events. Chavez could not recall exactly what she missed, did not know how those decisions were made, how many shifts she might have missed, or why she was not working the extra shifts. Docket no. 29 Ex, B: at pp. 76-77. Her citations to the record for this proposition do not support her allegations; they demonstrate she had some trouble following her divorce from Trevino and needed time off and that she also took time off to prosecute this lawsuit. *Id*. at pp. 75-76. The record contains no competent summary judgment evidence that she lost extra or bonus time or assignments in any way connected to her retaliation allegations in this lawsuit.

Finally, her argument regarding the accusation of cheating surrounding a running test is made at the end of the Plaintiff's Summary of Facts for the first time, is never referenced in the brief, there is no detail about who made the accusation, when it was made, why it was made, or any follow-up, and there is no citation to the record for the proposition that she was wrongly accused. The Court finds no other mention of this false accusation or a running test in the record. And even if there was, the Court cannot find this was a materially adverse employment action.

Chavez fails to raise genuine issues of material fact to survive summary judgment because she has not demonstrated that a reasonable trier of fact could find the City's offered nondiscriminatory reason was pretext for retaliation and was the but-for cause of her not being assigned the PT Coordinator position, or that any other actions she "suffered" were materially adverse employment actions.   The Court grants the City summary judgment on Chavez's retaliation claims.

## IV.   CONCLUSION

For the above stated reasons, the Court GRANTS Defendant's motion for summary judgment (docket no. 27).  Plaintiff's sex discrimination, harassment and retaliation claims are dismissed.  The Court dismisses the motions to strike (docket nos. 33, 34 and 35) as moot.

The Clerk is instructed to issue a Judgment that Plaintiff take nothing on all her claims. Defendant may seek its costs of court by filing a bill of costs within fourteen days of this order.

It is so ORDERED.

SIGNED this 19th day of August, 2015.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE